IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06-CV-398

| | |
|---|---|
| CARLYLE H. HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BELK STORES SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion is **GRANTED.**

## INTRODUCTION

The Defendant, Belk Stores Services, Inc. ("Belk"), employed the Plaintiff, Carlyle H. Hill, from May 1986 until May 2005. Hill filed this lawsuit alleging several causes of action. Count One alleges wrongful discharge as a violation of North Carolina's public policies as set forth in N.C. GEN. STAT. §§ 143-422.1. Count Two alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, and states that Belk denied his reinstatement, terminated him, and otherwise adversely affected his terms and conditions of employment because of his age. Count Three alleges wrongful discharge as a violation of North Carolina's public policies as set forth in N.C. GEN. STAT. §§ 95-126 and 95-240. Count Four alleges a violation of the Family and Medical Leave Act ("FMLA"), and states that Belk terminated him because of his request for leave pursuant to his wife's illness, denied him an opportunity for

reinstatement, and otherwise adversely affected his terms and conditions of employment because of his request for leave.

The Defendant filed a motion to dismiss some of these claims, and the court granted the motion. The following claims remain: (1) North Carolina wrongful discharge against public policies as set forth in N.C. GEN. STAT. §§ 142-422.1; (2) an ADEA discrimination claim; and (3) a FMLA claim. The Defendant has moved for summary judgment on all of the Plaintiff's remaining claims, alleging that Plaintiff's termination was due to his poor work performance, and that he was not reinstated because he voluntarily left Belk after an agreement regarding employment separation, recorded as retirement.

## FACTS

The facts, viewed in the light most favorable to Hill, are as follows. Belk hired Hill in 1986 as a Safety Coordinator and later gave him the title of Safety Manager. Hill was fifty-eight when his employment with Belk ended in 2005. In his nineteen years at Belk, Hill had several supervisors; however, for most of his employment, Belk Risk Manager Eston Walling supervised Hill. Until late 2003, Hill had excellent performance evaluations: "Carlyle is a consummate professional in all aspects of safety management. Legal staff continuously compliments Carlyle not only on safety management but knowledge of OSHA regulations and procedures." (Exh. 12, Belk p. 200, 2002 evaluation).

Beginning in 2004, Hill began receiving a series of poor performance evaluations. According to Hill, the change in these reviews occurred immediately after he vocalized concerns about various Belk safety features. During the last three years of his employment, Hill repeatedly

pointed out the deficiencies in the Belk safety program. Hill contends that these repeated complaints angered upper management, especially CFO Brian Marley. Subsequent to the complaints, Hill's supervisor, Gary Nesbit, gave Hill written disciplinary warnings in August and October of 2004. The warnings outlined specific problems and set forth Nesbit's expectations for improvement.

Hill alleges that several events led to his termination from Belk. On January 5, 2005, Hill told Nesbit that his wife had been diagnosed with Stage Three breast cancer. On January 17, 2005, Nesbit gave Hill a final warning explaining that Hill could be terminated within thirty days if his performance did not improve. On January 24, 2005, Hill met with Belk's Human Resources Vice President, Carolyn McGinnis, who offered Hill two options. Option one allowed Hill to continue his work as Safety Manager and strive towards meeting Belk's performance expectations. If Hill failed to meet expectations, he would be involuntarily terminated and receive no separation benefits. Option two allowed Hill to elect to have a fully-paid twelve week leave of absence, plus an additional four weeks of paid vacation in order to spend time with his wife during her illness and to seek other employment. According to Hill, McGinnis told him not that he *might* be terminated within thirty days under option one, but that he *would* be terminated. On January 25, 2005, Hill accepted option two and received $21,000 of benefits in the following weeks.

In May 2005, just prior to the end of the sixteen weeks of paid leave, Hill contacted Belk requesting to be reinstated to his previous position or to any other available position for which he was qualified. Belk did not reinstate Hill.

## DISCUSSION

A. **Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the nonmoving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made…an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading," rather "the adverse party's response… must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 520. This is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151.

B. **ADEA Claim**

In an age discrimination case brought under the ADEA, the plaintiff bears the burden of proving that the defendant's adverse hiring decision was motivated by the plaintiff's age. *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004). This can be demonstrated, and summary judgment survived, by one of two means. *Id.* at 284-85. First, the plaintiff may offer direct or circumstantial proof of a discriminatory motive as in any other case. *Id.* at 284; *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 847 (4th Cir. 1988). Second, the plaintiff may survive summary judgment in absence of such evidence by proving a prima facie case though application of the standards set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973); *Hill*, 354 F.3d at 285. Once a prima facie case is established, the employer-defendant must articulate a legitimate, nondiscriminatory reason or reasons for its action. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577-78 (1978). Finally, the burden then shifts back to the plaintiff to show that the articulated reasons were merely a pretext for discrimination and not the true motivation for the employer's action. *McDonnell Douglas*, 411 U.S. at 804.

To establish a prima facie case under *McDonnell Douglas*, the plaintiff must show the following: 1) he is in the protected age group; 2) he was discharged or demoted; 3) at the time of discharge or demotion, the plaintiff was performing at a level that met his employer's legitimate expectations; and 4) he was replaced by someone of comparable qualifications outside of the protected age group. *E.E.O.C. v. Western Elec. Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983). Only if the plaintiff can meet these four requirements does the burden shift to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). If the employer satisfies this burden, the presumption of discrimination "drops out of the picture," and the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reasons were pretextual and the plaintiff was in fact the victim of intentional discrimination. *Reeves*, 530 U.S. at 143. In deciding pretext, the court may still consider the evidence and inferences drawn from the plaintiff's prima facie case. *Id.* at 143.

In the present case, even if it is assumed that Hill can establish a prima facie case of age discrimination, summary judgment is still appropriate because Hill has failed to provide sufficient evidence that Belk's proffered legitimate, nondiscriminatory reasons for terminating him were pretextual. To rebut Hill's prima facie case, Belk has offered multiple explanations as

to why Hill's employment was terminated. In order to complete the *McDonnell Douglas* test and survive summary judgment, Hill must show that there is sufficient evidence to sustain a jury finding that these explanations are merely a pretext for age discrimination. He may do so either by showing that Belk's explanation is "'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). However, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason…is correct.'" *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524).

Belk cited Hill's poor performance evaluations as their legitimate nondiscriminatory reason for terminating Hill. Hill claims that he was terminated from his position as Safety Manager and was not considered for other available positions at Belk. Plaintiff alleges that Belk's termination was not based on poor performance but was a pretext for age discrimination. When an employee's only proffered evidence to combat his employer's legitimate reason for termination is that of poor performance evaluations and bad work habits, the employee fails to meet his burden of providing a sufficient showing of pretext to survive summary judgment. *Bayles v. Fidelity Bank*, 44 F. Supp. 2d 753, 759 (M.D.N.C. 1998). The Fourth Circuit has consistently held that termination after a poor performance evaluation is not enough evidence to establish pretext in an age discrimination claim. *Taylor v. Ameristeel Corp.*, 155 Fed. App'x 85, 89 (4th Cir. 2005) (affirming a grant of summary judgment where Plaintiff's only evidence of age discrimination was poor performance evaluations). Furthermore, courts have found evidence establishing previous adequate performance evaluations irrelevant in confirming pretext. *Ruff v.*

*Target Stores, Inc.*, 226 Fed. App'x 294, 301-02 (4th Cir. 2007). In the present case, Plaintiff has offered just that. Hill presents evidence of past performance evaluations demonstrating adequate performance. These evaluations merely establish that at one point Plaintiff was meeting expectations; they do not, however, suffice to show that the later poor evaluations were given as a matter of age discrimination.

As further evidence of pretext, Hill has introduced a previous ADEA claim brought against Defendant. As evidence of pretext, Hill alleges that his termination was not based on inadequate performance, but rather was part of Belk's "youth movement," which began in the late-1990s. Plaintiff alleges that the hiring of Marley as CFO in 2000 initiated the growth of the youth movement that prompted Belk to terminate Hill in favor of a younger employee five years later. Yet, Hill also makes the contradictory allegation that Marley fired him because he expressed safety concerns. However, even viewed in the light most favorable to the Plaintiff, the relationship between the previous ADEA claims and Hill's termination is too attenuated to present a question to the jury. "The mere scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992) (internal citations omitted).

The Fourth Circuit has also found that when a plaintiff admits under oath that he cannot point to any evidence of age discrimination, it undermines the plaintiff's claim that but for age, the employment decision would not have been made. *Clay Printing*, 955 F.2d at 941. Such is the case here. During his deposition, Hill testified that he had never heard McGinnis comment about any employee's age, nor did he feel that she would consider his own age negatively. (Pl.'s Dep.

78:12-20.)  Hill was also asked if he had any reason to believe that Nesbit had negatively considered his age when making decisions about Hill's employment, to which he replied, "No." (*Id.* at 79:11-14).  Therefore, the court concludes that the Defendant has established a legitimate, nondiscriminatory reason for Plaintiff's termination and, in the absence of a sufficient showing of pretext, the Plaintiff's ADEA claim will fail to survive summary judgment. [1]

### C. State Claim for Wrongful Discharge

The North Carolina Equal Employment Practices Act prohibits discrimination based on age as against public policy.  N.C. GEN. STAT. § 143-422.2 (1977).  Wrongful discharge claims asserting the EEPA statute as the public policy pronouncement are analyzed in accordance with the proof scheme applicable to federal discrimination claims.  *Reed v. Buckeye Fire Equip. Co.*, 422 F. Supp. 2d 570, 580 (W.D.N.C. 2006), appeal filed.  Docket No. 06-1481 (4th Cir. April 21, 2006); *N.C. Dept. of Corr. v. Gibson*, 308 N.C. 131, 137-40, 301 S.E.2d 78, 82-84 (1983) (stating that *McDonnell Douglas* proof scheme applies).  In the context of age discrimination, the applicable federal law is the Age Discrimination in Employment Act, 29 U.S.C. § 621 (1967).

North Carolina courts have held that if a "[p]laintiff's ADEA claim fails, his [state] claim for wrongful discharge on the basis of unlawful age discrimination also fails."  *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003).  Therefore, Plaintiff's state claim for wrongful discharge must fail.

---

[1] Plaintiff's claim would also fail for want of a timely E.E.O.C. charge.  *Lenhart v. General Elec. Co.*, 140 F.Supp.2d 582, 590-91 (W.D.N.C. 2001).  All facts taken into consideration, the latest date for filing would have been July 23, 2005.  Plaintiff did not file until July 25, 2005; therefore, Plaintiff's ADEA claim would not succeed for failure to follow procedural mechanisms.

**D. FMLA Claim**

Under the Family Medical Leave Act, an employee is entitled to twelve weeks leave in order to care for a spouse with a serious health condition. 29 U.S.C. § 2612 (1993). It is unlawful for an employer to discharge an employee for filing or inquiring about this act. 29 U.S.C. § 2615 (1993). The burden of proof for a claim under the FMLA is similar to that established under *McDonnell Douglas*. *O'neill v. Henderson County Hosp. Corp.*, 2005 WL 3797394 (W.D.N.C. 2005). The plaintiff must first establish a prima facie case by showing that he exercised a FMLA protected right, he suffered an adverse employment action, and there was a causal connection between the two. *Id.* at *2. The burden then shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the action. *Id.* If the defendant successfully does so, the burden returns to the plaintiff to prove that the nondiscriminatory explanation put forth by the defendant is a pretext for discrimination. *Id.*

Hill argues that twelve weeks of his sixteen-week leave from Belk was FMLA leave due to his wife's illness and that he was terminated at the end of his leave. Assuming these are sufficient to meet the first two prongs of a prima facie case, Hill must still prove a causal connection. Courts have found that where a plaintiff fails to offer evidence showing a causal connection to link the adverse employment action to his use of the FMLA, the plaintiff's claim fails. *Keene v. Thompson*, 232 F. Supp. 2d 574, 584-85 (M.D.N.C. 2002); *Klaiber v. Rinaldi*, 2001 WL 823529, *7 (M.D.N.C. 2001). This court is not aware of, nor has Hill offered, any evidence of a causal link between his FMLA leave and his termination. Therefore, there is no genuine issue of material fact that Hill's termination resulted from his desire to take leave to be with his wife during her illness.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is hereby **GRANTED**.

Signed: August 5, 2009

Graham C. Mullen
United States District Judge